**MARLIN & SALTZMAN, LLP**
Stanley D. Saltzman, Esq. [SBN 90058]
Stephen P. O'Dell, Esq. [SBN 132279]
Tina Mehr, Esq. [SBN 275659]
29229 Canwood Street, Suite 208
Agoura Hills, California  91301
Phone: (818) 991-8080 | Fax: (818) 991-8081

**THE HAMIDEH FIRM, P.C.**
Bassil A. Hamideh (SBN: 261233)
1801 Century Park East, Suite 2400
Los Angeles, CA  90067
(310) 556-9687; Fax:  (310) 733-5699

**LAW OFFICE OF PETER SHAHRIARI**
Peter Shahriari (SBN: 237074)
1901 Avenue Of The Stars, Suite 200
Los Angeles, CA  90067
(310) 557-2222; Fax:  (310) 557-2220

Attorneys for Plaintiffs,
HAZEL REYES, CRYSTAL DIAZ, SOPHALITHA DUONG,
DANIEL SARKIS, DESIREE ARIAS, LAURIE E. NGUYEN,
JOSEPH WONG, THOMAS M. PHAN, ELISA PEREZ,
ANETA BOGHOSSIAN, BRIAN HIMES,
NIKOLA STOJANOVIC, and ALISA HICKENBOTHAM

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAZEL REYES, CRYSTAL DIAZ, SOPHALITHA DUONG, DANIEL SARKIS, DESIREE ARIAS, LAURIE E. NGUYEN, JOSEPH WONG, THOMAS M. PHAN, ELISA PEREZ, ANETA BOGHOSSIAN, BRIAN HIMES, NIKOLA STOJANOVIC, and ALISA HICKENBOTHAM, all individuals, <br><br>        Plaintiffs, <br><br> v. <br><br> TRANSAMERICA LIFE INSURANCE COMPANY, a business entity of unknown form; TRANSAMERICA RETIREMENT SOLUTIONS, a | Case No.:  2:15-CV-03452-DMG-FFM <br><br> **THIRD AMENDED COMPLAINT** <br><br> 1) Failure To Pay Premium Wages (Labor Code §§ 510, 558, 1194; Wage Order); <br> 2)  Failure To Provide Required Meal Breaks (Labor Code §§ 226.7, 558, 512; Wage Order); <br> 3)  Failure To Provide Required Rest Breaks (Labor Code §§ 226.7, 558; Wage Order); <br> 4)  Failure To Maintain Required Business Records (Labor Code §§ 1174, 1174.5; Wage Order); <br> 5)  Failure To Provide Accurate Itemized Wage Statements (Labor Code §§ 226, 226.3; Wage Order); <br> 6)  Failure To Pay All Earned Wages Upon Separation From Employment (Labor Code §§ 200-203); |

business entity of unknown form,

Defendants.

7)  Retaliation (Common Law; 29 U.S.C. § 215(a)(3); Labor Code § 98.6)
8)  Unfair Business Practices (Bus. & Prof Code §§ 17200, *Et Seq.*);
9)  Civil Penalties Under Private Attorneys General Act (Labor Code §§ 558, 2698, et seq.); and,
10)  Failure to Pay Minimum Wages and/or Overtime, Under the Fair Labor Standards Act (29 U.S.C. §§ 206, *et seq.*)

COME NOW PLAINTIFFS, HAZEL REYES, CRYSTAL DIAZ, SOPHALITHA DUONG, DANIEL SARKIS, DESIREE ARIAS, LAURIE E. NGUYEN, JOSEPH WONG, THOMAS M. PHAN, ELISA PEREZ, ANETA BOGHOSSIAN, BRIAN HIMES, NIKOLA STOJANOVIC, and ALISA HICKENBOTHAM (collectively, "PLAINTIFFS"), and complain and allege against defendants herein, in the following particulars:

1. PLAINTIFFS bring this action against defendants herein, Transamerica Life Insurance Company, Transamerica Retirement Solutions, and DOES 1 through 100 (collectively, "DEFENDANTS").  Unless specifically stated otherwise, reference to "PLAINTIFFS" throughout this complaint means "PLAINTIFFS and each of them."

2. PLAINTIFFS, at all times pertinent, work/worked in the position of "Project Manager" or related positions for DEFENDANTS, as alleged hereinafter. In that capacity, PLAINTIFFS were tasked, primarily, with non-exempt clerical work, including, but not limited to, entering data (e.g., from acquired 401(k) retirement plans that had originated outside of DEFENDANTS' company) into DEFENDANTS' computer system, talking on the phone, sending and responding to emails, and logging such activities.

3. Prior to January 2014, DEFENDANTS classified PLAINTIFFS as "exempt" from certain statutory and regulatory provisions governing the treatment of employees, resulting in PLAINTIFFS being denied overtime pay, as well as

Third Amended Complaint

mandatory meal and rest breaks.  PLAINTIFFS were paid on a salaried basis and received compensation on a salaried basis, regardless of the number of overtime hours worked.

4. PLAINTIFFS were given heavy workloads that could not, within reason, permit them to take all required meal and rest breaks and also allow them to complete all of their assigned tasks within eight hours per day .  Plaintiffs were given quotas and expected to complete them by set times (EST and not PST time every Friday).  In order to keep up with DEFENDANTS' heavy workload, PLAINTIFFS were forced to work through their meal and rest breaks as well as resort to working from home, working overtime at the office, and working on weekends.  The egregiousness of the long work hours and long workweeks was compounded by the fact that PLAINTIFFS were then publicly judged by DEFENDANTS for their ability to meet this imposing criteria.

5. PLAINTIFFS allege that during peak periods, commonly referred to as "DefComm 4" (e.g., throughout the fourth quarter of any given year), PLAINTIFFS were required to work far in excess of eight hours a day in order to keep up with the heavy workloads placed on PLAINTIFFS by DEFENDANTS. Failure to work such overtime as was necessary to achieve satisfactory performance reviews was reported by supervisors and noted by management and reflected in the periodic Quality Assessment Scoring that DEFENDANTS utilized to measure the employee's job performance, which, in turn, affected the employees' respective pay rates, reputation, and longevity with the DEFENDANTS.

6. PLAINTIFFS allege that they were not provided with legally compliant first or second duty-free meal breaks, when legally required, nor were required periodic rest breaks permitted, and in fact, to the contrary, as a matter of routine procedure, policy, custom and practice, DEFENDANTS frowned on the taking of any breaks (even just to use the restroom), impeded the taking of breaks, and

1   created an intimidating work environment adverse to taking such breaks.

2   7. DEFENDANTS improperly shifted their burden to relieve Plaintiffs of all
3   duty during breaks onto Plaintiffs' shoulders along with all of the other
4   responsibilities and obligations Plaintiffs were required to meet in any given day
5   and subsequently, lined Plaintiffs up on a publicly disseminated, department-wide
6   performance listing and publicly humiliated them for any failure to do meet these
7   criteria.

8   8. PLAINTIFFS allege, on information and belief, and in part upon personal
9   knowledge, that at some time prior to January 2013, DEFENDANTS determined
10  that the Project Managers (and similar positions) were improperly classified as
11  "exempt" from the provisions of the Labor Code and the applicable IWC Wage
12  Order pertaining to DEFENDANTS' industry (i.e., IWC Wage Order No. 4-2001).
13  As a result of that determination, the DEFENDANTS reclassified all existing
14  Project Managers (and similar positions) to "non-exempt."   Further, upon
15  information and belief, and in part upon personal knowledge, PLAINTIFFS allege
16  that at the time of the determination that the Project Managers were misclassified,
17  the DEFENDANTS herein acknowledged to the then-current employees, by word
18  and by deed, that they had misclassified the Project Managers (and similar
19  positions) as "exempt."

20  9. DEFENDANTS' actions and treatment of PLAINTIFFS were unlawful
21  and thus, give rise to the causes of action set forth herein.

## PARTIES

22

23  10. Plaintiff, Hazel Reyes, is a resident of the State of California, residing in
24  Los Angeles, in the County of Los Angeles.  Ms. Reyes has been employed by
25  DEFENDANTS herein as a Project Manager since on or about March 14, 2011.

26  11. Plaintiff, Crystal Diaz, is a resident of the State of California, residing in
27  Monrovia, in the County of Los Angeles.  Ms. Diaz has been employed by
28  DEFENDANTS herein as a Project Manager since on or about August 10, 2011.

12. Plaintiff, Sophalitha Duong, is a resident of the State of California, residing in Norwalk, in the County of Los Angeles.  Ms. Duong has been employed by DEFENDANTS herein as a Project Manager since on or about September 10, 2006.

13. Plaintiff, Daniel Sarkis, is a resident of the State of California, residing in Pasadena, in the County of Los Angeles.  Mr. Sarkis has been employed by DEFENDANTS herein as a Project Manager since on or about February 10, 2010.

14. Plaintiff, Desiree Arias, is a resident of the State of California, residing in Whittier, in the County of Los Angeles.  Ms. Arias has been employed by DEFENDANTS herein as a Project Manager since on or about September 26, 2011.

15. Plaintiff, Laurie E. Nguyen, is a resident of the State of California, residing in Westminster, in Orange County.  Ms. Nguyen was employed by DEFENDANTS herein as a Project Manager from approximately December 28, 2010 until August 6, 2012.

16. Plaintiff, Joseph Wong, is a resident of the State of California, residing in Walnut, in the County of Los Angeles.  Mr. Wong was employed by DEFENDANTS herein as a Project Manager from approximately August 1, 2011 until October 10, 2014.

17. Plaintiff, Thomas Phan, is a resident of the State of California, residing in Fullerton, in Orange County.  Mr. Phan has been employed by DEFENDANTS herein as a Project Manager since on or about September 28, 2009.

18. Plaintiff, Elisa Perez, is a resident of the State of California, residing in Temple City, in the County of Los Angeles.  Ms. Perez has been employed by DEFENDANTS herein as a Project Manager since on or about March 14, 2011.

19. Plaintiff, Aneta Boghossian, is a resident of the State of California, residing in Glendale, in the County of Los Angeles.  Ms. Boghossian has been employed by DEFENDANTS herein as a Project Manager since on or about May

10, 2005.

20. Plaintiff, Brian Himes, is a resident of the State of California, residing in Glendale, in the County of Los Angeles. Mr. Himes has been employed by DEFENDANTS herein as a Project Manager since on or about March 14, 2011.

21. Plaintiff, Nikola Stojanovic, is a resident of the State of California, residing in Los Angeles, in the County of Los Angeles. Mr. Stojanovic has been employed by DEFENDANTS herein as a Project Manager since on or about December 15, 2008.

22. Plaintiff, Alicia Hickenbotham, is a resident of the State of California, residing in Valencia, in the County of Los Angeles. Ms. Hickenbotham has been employed by DEFENDANTS herein as a Project Manager since on or about March 14, 2011.

23. Defendant, Transamerica Life Insurance Company ("TLIC") is a business entity of unknown form, but upon information and belief thought to be a foreign corporation, registered to do business within the State of California, with its principal and/or home office located in Cedar Rapids, Iowa.

24. Defendant, Transamerica Retirement Solutions ("TRS") is a business entity of unknown form, but upon information and belief thought to be a foreign corporation, registered to do business within the State of California, with its principal and/or home office located in Harrison, New York.

25. PLAINTIFFS are informed and believe, and based thereon allege, that at all times pertinent hereto, each of the Defendants named herein was the agent, employee, alter ego, and/or joint venturer of, or working in concert with, each of the other co-Defendants and was acting within the course and scope of such agency, employment, joint venture, or concerted activity. To the extent the said acts, conduct, and omissions were perpetrated by certain Defendants, each of the remaining Defendants confirmed and ratified said acts, conduct, and omissions of the acting Defendants.

26. At all times pertinent hereto, Defendants, and each of them, were members of, and engaged in, a joint venture, partnership and common enterprise, and acting within the course and scope of, and in pursuance of, said joint venture, partnership and common enterprise.

27. At all times pertinent hereto, the acts and omissions of various Defendants, and each of them, concurred with and contributed to the various acts and omissions of each and all of the other Defendants in proximately causing the injuries and damages as herein alleged.  At all pertinent times, Defendants, and each of them, ratified each and every act or omission complained of herein.  At all pertinent times, the Defendants, and each of them, aided and abetted the acts and omissions of each and all of the other Defendants in proximately causing the damages as herein alleged.

28. Hereafter, defendants TLIC, TRS, and DOES 1-100, collectively, are referred to as "DEFENDANTS."

## JURISDICTION

29. The Court has jurisdiction pursuant to 28 U.S.C. § 1453 as this action was removed from the Superior Court of the State of California.


## FIRST CAUSE OF ACTION
## FOR FAILURE TO PAY PREMIUM COMPENSATION
### (Labor Code §§ 510, 558, 1194; Wage Order)
### (By PLAINTIFFS Against All DEFENDANTS)

30. PLAINTIFFS hereby incorporate by reference the preceding paragraphs of this complaint as though set forth in full at this point.

31. Labor Code section 510(a) and the applicable Wage Order provide that eight hours of labor constitutes a days work and that any work in excess of eight hours in one workday or 40 hours in any one workweek and the first eight hours worked on the seventh day of work any one workweek shall be compensated at the

rate of no less than 1½ times the regular rate of pay for an employee.

32. Labor Code section 510(a) and the applicable Wage Order provide that any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee, as must any work in excess of eight hours on any seventh day of a workweek.

33.  Prior to reclassification, PLAINTIFFS were paid a salary. The regular hourly rate of compensation to be used to calculate overtime to be paid to a salaried employee is computed by using one-fortieth ($1/40^{th}$) of the employee's weekly salary as the employee's regular hourly rate.

34. PLAINTIFFS were regularly required to work in excess of eight hours in a day and/or 40 hours in a workweek (including days that exceeded 12 hours in a work day and workweeks that included a seventh day of work).  DEFENDANTS did not compensate PLAINTIFFS at the statutory rates for their overtime work, but rather only paid the PLAINTIFFS their regular salaries.

35. DEFENDANTS' failure to compensate PLAINTIFFS for their overtime work violated Labor Code section 510 and the applicable Wage Order.

36. PLAINTIFFS are entitled to recover the unpaid balance of the full amount of overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

## SECOND CAUSE OF ACTION

### FOR FAILURE TO PROVIDE REQUIRED MEAL BREAKS

**(Labor Code §§ 226.7, 558, 512; Wage Order)**

**(By PLAINTIFFS Against All DEFENDANTS)**

37. PLAINTIFFS hereby incorporate by reference the preceding paragraphs of this complaint as though set forth in full at this point.

38. Labor Code section 512 and the applicable Wage Order declare that an employer may not employ any person for a work period of more than five hours without a meal period of not less than 30 minutes.  Unless the employee is relieved

of all duty during a 30 minute period, the meal period shall be considered an "on duty" meal period and counted as time worked.

39. "On duty" meal periods are permitted only when the nature of the work prevents an employee from being relieved of all duty.  Otherwise, a valid meal period must relieve the employee of all duties for at least 30 minutes and the employer must relinquish control over the employee's activities for the full time allotted and may not impede or discourage the employee from taking the break, whether explicitly or through routine business practices.

40. Labor Code section 512 and the applicable Wage Order require that a second meal period be provided when an employee works for more than 10 hours per day.

41. Labor Code section 226.7 and the applicable Wage Order direct that if the employer fails to provide an employee with a meal break in accordance with Labor Code section 512 and/or the Wage Order, the employer shall credit the employee with and pay one additional hour of work at the employee's regular rate of compensation for each workday that the meal period was not provided.

42. DEFENDANTS required PLAINTIFFS to work through meal breaks and, in fact, discouraged and/or inhibited any duty-free breaks of any nature whatsoever.  The workload placed on PLAINTIFFS was such that it would have been impractical, if not impossible, to meet DEFENDANTS' productivity standards, if the required meal breaks would have been taken as prescribed by the Labor Code and governing Wage Order.

43. PLAINTIFFS further allege that, notwithstanding any formal written policy to the contrary, DEFENDANTS' actual custom and business practice was to undermine any formal policy of providing meal breaks by pressuring employees to perform their duties in ways that omitted breaks, including, but not limited to, scheduling a heavy workload that made taking breaks extremely difficult, maintaining an informal anti-meal-break policy enforced through ridicule or

reprimand, and otherwise exerting coercion against the taking of, creating incentives to forego, or otherwise encouraging the skipping of legally protected breaks.

44. Likewise, DEFENDANTS did not provide a second, duty-free meal period when PLAINTIFFS and the Class members worked more than 10 hours in a workday, as required by the Labor Code and the Wage Order.

45. After the PLAINTIFFS were reclassified from "exempt" to "non-exempt," in 2014, DEFENDANTS required PLAINTIFFS to record their daily hours worked, including an indication that a meal break was taken.  When first introduced to PLAINTIFFS, the timekeeping software included an "auto-fill" feature that allowed users, with the click of a button, to automatically generate timesheets that complied with DEFENDANTS' timekeeping requirements (i.e., DEFENDANTS' ideal 40 hour workweek and a minimum 30 minute meal period each day).  PLAINTIFFS and other employees used this convenient, time-saving feature, notwithstanding the fact that many were working through all or part of their meal breaks.  At a later point in time, DEFENDANTS introduced a "certification" statement into the user interface, so that the screen required users to "certify" that they had entered "accurate" (i.e., actual) time and had been "provided" with all of their meal and rest breaks.  At no time was the workload adjusted downward from the pre-reclassification time frame.  This new requirement conflicted with other policies imposed on PLAINTIFFS, including, but not limited to, the overriding policy of timely completion of work and quotas for providing superior customer service to DEFENDANTS' clients.  At the same time, DEFENDANTS also imposed a policy on PLAINTIFFS, restricting the amount of overtime that they would be permitted to work and prohibiting them from working any unauthorized overtime, despite the fact that the PLAINTIFFS' workloads remained the same as they had been prior to the reclassification. DEFENDANTS used the conflicting policies to coerce PLAINTIFFS to work

through all or parts of meal periods, but to record that they had taken a meal period, so as to comply with DEFENDANTS' recordkeeping and overtime policies, still deliver the timely work and customer service demanded by DEFENDANTS, and in order to be timely paid.   At all times pertinent, DEFENDANTS did not pay PLAINTIFFS for the time they spent working through their meal periods or the meal period premium of an additional hour of pay at the regular rate, whenever duty-free, uninterrupted meal periods were not provided, as required by the Labor Code and the Wage Order.

46. PLAINTIFFS are entitled to be compensated for an hour of time, at their regular rate, for each occasion when DEFENDANTS failed to provide a required meal break.

**THIRD CAUSE OF ACTION**

**FOR FAILURE TO PROVIDE REQUIRED REST BREAKS**

**(Labor Code § 226.7, 558; Wage Order)**

**(By PLAINTIFFS Against All DEFENDANTS)**

47. PLAINTIFFS hereby incorporate by reference the preceding paragraphs of this complaint as though set forth in full at this point.

48. The applicable Wage Order provides that every employer must authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period.  The authorized rest period time is based on the total hours worked each day, at the rate of ten minutes net rest time per four hours or major fraction thereof.  The Wage Order declares that such authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.

49. Labor Code section 226.7 and the Wage Order direct that if the employer fails to provide an employee with a rest break in accordance with the Wage Order, the employer shall credit the employee with and pay one additional hour of work at the employee's regular rate of compensation for each workday that a rest period

was not provided.

50. PLAINTIFFS allege that DEFENDANTS did not provide the rest breaks required by the Wage Order.  PLAINTIFFS further allege that, notwithstanding any formal written policy to the contrary, DEFENDANTS' actual custom and business practice was to undermine any formal policy of providing rest breaks by pressuring employees to perform their duties in ways that omitted breaks, including, but not limited to, scheduling a heavy workload that made taking breaks extremely difficult, maintaining an informal anti-rest-break policy enforced through ridicule or reprimand, and exerting coercion against the taking of, creating incentives to forego, or otherwise encouraging the skipping of legally protected breaks.

51. After the PLAINTIFFS were reclassified from "exempt" to "non-exempt," in 2014, DEFENDANTS required PLAINTIFFS to record their daily hours worked, including a certification that all rest breaks had been taken.  This new requirement conflicted with other policies imposed on PLAINTIFFS, including, but not limited to, the overriding policy of timely completion of work and quotas for providing superior customer service to DEFENDANTS' clients.  At the same time, DEFENDANTS also imposed a policy on PLAINTIFFS, restricting the amount of overtime that they would be permitted to work and prohibiting them from working any unauthorized overtime, despite the fact that the PLAINTIFFS' workloads remained the same as they had been prior to the reclassification.  As a result of the conflicting and confusing policies, PLAINTIFFS were coerced by DEFENDANTS to work through all or parts of rest breaks, but to certify that they had taken rest breaks, so as to comply with DEFENDANTS' recordkeeping and overtime policies, still deliver the timely work and customer service demanded by DEFENDANTS, and in order to be timely paid.

52. At all times pertinent, DEFENDANTS did not pay PLAINTIFFS the rest period premium of an additional hour of pay at the regular rate, whenever rest

breaks were not permitted, as required by the Labor Code and the Wage Order.

53. PLAINTIFFS are entitled to be compensated for an hour of time, at their regular rate, for each occasion when DEFENDANTS failed to provide a required rest break.

## FOURTH CAUSE OF ACTION
## FAILURE TO KEEP REQUIRED RECORDS
### (Labor Code §§ 1174, et seq.; Wage Order)
### (By PLAINTIFFS Against All DEFENDANTS)

54. PLAINTIFFS hereby incorporate by reference the preceding paragraphs of this complaint as though set forth in full at this point.

55. The Labor Code and applicable Wage Order require employers to keep certain accurate business records, including each employee's daily hours worked (when each employee began and ended each work period, the start and end of meal periods, total daily hours worked, total hours worked in the pay period).   In addition, the employer is required to accurately record the information required to be provided with each pay check, pursuant to Labor Code section 226.

56. Any employer who fails to maintain such records or to accurately maintain such records is subject to a civil penalty, under Labor Code section 1174.5 and under the Wage Order.

57. PLAINTIFFS allege that DEFENDANTS failed to keep accurate payroll and timekeeping records, as required by law.   Specifically, PLAINTIFFS allege that DEFENDANTS failed to keep accurate records of all time worked, including overtime, as well as the start and end times of meal breaks.

58. PLAINTIFFS are entitled to the civil penalties imposed by the Labor Code and the applicable Wage Order.

///
///

Third Amended Complaint

1  ///

2  ///

3  ///

4

5  **FIFTH CAUSE OF ACTION**

6  **FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS**

7  **(Labor Code §§ 226, 226.3; Wage Order)**

8  **(By PLAINTIFFS Against All DEFENDANTS)**

9  59. PLAINTIFFS hereby incorporate by reference the preceding paragraphs

10 of this complaint as though set forth in full at this point.

11 60. Pursuant to the Labor Code and the Wage Order, every employer must

12 provide accurate itemized wage statements at the time employees are paid,

13 showing accurate figures for, *inter alia*, gross wages earned, total hours worked,

14 net wages earned, and all applicable hourly rates in effect during the pay period

15 and the corresponding number of hours worked at each hourly rate by the

16 employee.

17 61. PLAINTIFFS allege that they did not receive accurate itemized wage

18 statements, as required by law, in that the wage statements provided to them did

19 not accurately reflect correct figures for gross wages earned, total hours worked,

20 net wages earned, and/or all applicable hourly rates in effect with the

21 corresponding number of hours worked at each hourly rate.

22 62. As alleged hereinabove, DEFENDANTS did not keep accurate

23 timekeeping or payroll records and, at any rate, DEFENDANTS failed to provide

24 accurate and complete information, as required by law, and PLAINTIFFS could

25 not easily and promptly determine from their wage statements, alone, that they had

26 been properly paid.  Overtime pay and premium pay for missed meal and rest

27 breaks were not listed on the wage statements, such that no calculations could be

28 performed to derive the accurate times, rates, and pay that should have been part of

14

their compensation.  The information to make such determinations could not be readily ascertained by the wage statement, standing alone, or without reference to other documents or information.

63. As a result of DEFENDANTS' failure to provide the accurate itemized wage statements required by law, PLAINTIFFS have been injured in the manner set forth in the Labor Code.

64. PLAINTIFFS are entitled to the statutory penalty set forth at Labor Code section 226(e), to injunctive relief to ensure compliance with the law, to the civil penalty set forth in Labor Code section 226.3, to the civil penalty set forth in the applicable Wage Order, to costs of suit, and reasonable attorney's fees.

**SIXTH CAUSE OF ACTION**

**FAILURE TO PAY ALL EARNED WAGES**

**UPON SEPARATION FROM EMPLOYMENT**

**(Labor Code §§ 200-203)**

**(By Plaintiffs NGUYEN and WONG Against All DEFENDANTS)**

65. PLAINTIFFS hereby incorporate by reference the preceding paragraphs of this complaint as though set forth in full at this point.

66. Labor Code §§ 201 and 202 require that DEFENDANTS pay their employees all wages due within 24 hours after a discharge or 72 hours after a resignation from employment, if the employee has given less than 72 hours notice. Labor Code § 203 provides that if an employer willfully fails to timely pay such wages the employer must, as a penalty, continue to pay the employee's daily wage until the back wages are paid in full or an action is commenced.  The penalty cannot exceed 30 days of wages.

67. The PLAINTIFFS whose employment relationship with DEFENDANTS has terminated are entitled to compensation for all wages earned, including without limitation, the unpaid overtime, double time, and premium wages for rest and meal

periods not provided, but to date have not received such compensation.

68. More than 30 days have passed since the PLAINTIFFS bringing this claim terminated from their employment with DEFENDANTS.

69. DEFENDANTS have not paid PLAINTIFFS all wages owed.  As a consequence of DEFENDANTS' willful conduct in not paying PLAINTIFFS all earned wages at the time their employment with DEFENDANTS ended, each of said PLAINTIFFS is entitled to 30 days' wages as a penalty under Labor Code § 203.

### SEVENTH CAUSE OF ACTION
### RETALIATION
### (Common Law; 29 U.S.C. § 215(a)(3); and Labor Code § 98.6)
### (By PLAINTIFFS Against DEFENDANTS)

70. Plaintiffs incorporate by reference the foregoing allegations of this complaint, as though set forth in full at this point.

71. As set forth in Labor Code section 90.5.(a), the public policy of the State of California includes vigorous enforcement of minimum labor standards in order to ensure employees are not required or permitted to work under substandard unlawful conditions.  Being paid for all hours worked and being provided with duty-free breaks are primary examples of these very minimum labor standards.

72.  As alleged herein, the PLAINTIFFS have brought this lawsuit, *inter alia*, to recover regular wages, plus premium wages, for meal and rest breaks that they were entitled to receive but that DEFENDANTS failed to provide and/or permit.  Seeking redress for violations of the Labor Code is a protected activity under both federal and state law.

73. This complaint also seeks civil penalties under Labor Code § 2699, *et seq.* ("PAGA") for, *inter alia*, DEFENDANTS' failure to comply with the provisions of the Labor Code and/or applicable Wage Order, with respect to meal

periods and rest breaks.

74. On or about October 8 and 9, 2015, Plaintiffs Thomas Phan and Nikola Stojanovic, respectively, gave deposition testimony in this case.  Testifying regarding facts that form the basis of one's own lawsuit is a protected activity under multiple federal and state statutes including the United States Constitution. Every private citizen owes an obligation to the government and to the public to testify truthfully under oath

75. During the depositions, each of the Plaintiffs testified, consistent with the allegations of the then-operative complaint, that DEFENDANTS, notwithstanding facially compliant written policies to the contrary, created, fostered, and maintained unlawful practices and/or conflicting policies that undermined their written policy of providing meal breaks and/or permitting rest breaks, by pressuring employees to perform their duties in ways that omitted breaks, including but not limited to, scheduling heavy workloads that made taking breaks extremely difficult, maintaining an informal anti-break culture and environment which was enforced through ridicule or reprimand, and otherwise exerting coercion against the taking of, creating incentives to forego, or otherwise encouraging the skipping of legally protected breaks.  For approximately one half of each year, the workload was so extreme and exaggerated that even the managers routinely referred to the staff, including the Plaintiffs herein, as being in what was referred to as "DefComm Four", referencing the intense and extreme military level of preparation for a potential nuclear altercation.  The term rang true to all the staff and managers.  DEFENDANTS' staffing model sent the message loud and clear to all employees that DEFENDANTS' business needs trump wage and hour laws designed to protect employees from this very situation.

76. Plaintiffs Phan and Stojanovic testified that after their positions were reclassified as "non-exempt," in 2014, DEFENDANTS imposed new written policies on them, which for the first time in their long employment with the

Third Amended Complaint

DEFENDANTS included stating that they and their co-workers were required to record their work time, including a minimum 30 minute meal break, and prohibiting them from working unauthorized overtime.  Both also testified that the number of client accounts assigned to them to service (their workload) were approximately the same *or greater than before the reclassification took place*. Prior to the re-classification, Plaintiffs and their co-workers had labored for years as wrongfully misclassified exempt employees in an environment where breaks were not formally provided or encouraged, and they and their co-workers had routinely worked through breaks while attempting to maintain the workloads required of them by the DEFENDANTS.

77. Plaintiffs Phan and Stojanovic further testified that these new policies conflicted with the overriding policy, mission, and goal of timely completion of the work and quotas for providing superior customer service to Defendants' clients and, as a consequence of the conflict of the policies, they routinely  recorded that they took a minimum 30 minute meal break and certified that they took all of their rest breaks, even though they had worked through all or part of them.  The Plaintiffs testified that they did so in order to comply with DEFENDANTS' timekeeping policy, to avoid working unauthorized overtime, and in order to ensure that they timely would receive their paychecks.  For some period of time following the re-classification of the workers as non-exempt, the time keeping system even allowed for the "auto-filling" of the required timesheets, including the required meal breaks, such that by simply pressing auto-fill, the time sheets would be automatically populate with data showing a perfect 8 hours worked per day, plus a perfect 30 minute meal period at the approximate mid-point of each day.

78. On November 16, 2015, at the deposition of co-Plaintiff Daniel Sarkis, DEFENDANTS' counsel, in front of Mr. Sarkis, presented PLAINTIFFS' counsel with two "Final Written Warnings," one for Mr. Phan and one for Mr. Stojanovic. The warnings specifically advised each Plaintiff that their jobs were "in jeopardy,"

as a result of the testimony that they had given and that they were no longer eligible for the bonus to which they would have otherwise been entitled.  The Warnings expressly stated that because of the admissions made under oath by each at their respective depositions, DEFENDANTS considered each of them to be in violation of company policy prohibiting the submission of inaccurate time records, that DEFENDANTS therefore were imposing the adverse employment action, and advising that (1) any further infractions, whether related to the recording of time or not, would result in their termination from employment, and (2) that neither gentleman would be eligible to receive their yearly bonus.  At all times pertinent to this lawsuit, both Mr. Phan and Mr. Stojanovic had received their yearly bonuses and relied on them to comprise part of their yearly income.

79. PLAINTIFFS' counsel confirmed, and DEFENDANTS have not denied in proceedings before the Court, that the Final Written Warnings in fact were issued and given to Mr. Phan and Mr. Stojanovic, on or about November 16, 2015.  And, in fact, each of them were called into the human resources department, presented with the warning, which stated that they were on "Final Written Warning," such that their jobs were now "in jeopardy" based on any subsequent misconduct at the company.  Additionally, as a result of the Final Written Warnings, they were rendered ineligible for the yearly bonus.  True and correct copies of the documents are attached hereto as Exhibits 1 (Phan) and 2 (Stojanovic).

80. The Final Written Warnings explicitly stated that they were based on the "admi[ssions]" [in the deposition under oath] provided by each Plaintiff regarding conduct in the past, which conduct was essentially supportive of their claims in the operative complaint that despite any written policies to the contrary, DEFENDANTS did not actually provide a compliant meal break or permit required rest breaks.

81. Ms. Darcy Hatton, DEFENDANTS' Senior Vice President, who was

Third Amended Complaint

present at both depositions, has repeatedly testified by declaration in these proceedings that upon learning via the deposition testimony about the inaccurate timesheet entries made by Mr. Phan and Mr. Stojanovic, she made the decision to discipline them.  Though Ms. Hatton has declared that such a practice is routine, not one single example of such conduct has been presented to the Court.  Instead, in all of the instances that DEFENDANTS have brought to the Court's attention, as of the date this complaint is being amended, where an employee suffered adverse employment decisions, it was because that employee was actually stealing time as opposed going unpaid for time actually worked, or otherwise involved an employee being intoxicated or committing malfeasance.  PLAINTIFFS allege, on information and belief, and as is more readily known to DEFENDANTS, that no one in the Department in which PLAINTIFFS work, prior to the Final Written Warnings issued to Plaintiffs Phan and Stojanovic, has ever received a Final Written Warning for going unpaid for time actually worked, by recording a break and then working through it.  Additionally, in no prior example submitted by DEFENDANTS to the Court, has a Transamerica employee's job been placed "in jeopardy" nor has bonus eligibility been taken away, for meal break inaccuracies, as was done to the Plaintiffs herein.

82. The Final Written Warnings issued to Plaintiffs Phan and Stojanovic, based on their engaging in constitutionally protected activity, constitutes retaliation by DEFENDANTS against each of them.  Further, on information and belief it is alleged that DEFENDANTS' adverse employment actions as to Plaintiffs Phan and Stojanovic were intended to intimidate and, in fact, did intimidate the other PLAINTIFFS in this action by tacitly threatening them that if they testified to the truth about DEFENDANTS' workplace practices and environment that they, too, would receive similar treatment, placing their jobs in jeopardy, making them ineligible to receive bonuses, and clouding their personnel files with respect to future considerations such as performance reviews, longevity with the company,

wage increases, and transfers to other positions.

83. DEFENDANTS' threats to discharge, retaliate against, subject to adverse action, or otherwise discriminate against PLAINTIFFS with respect to the terms and conditions of their employment, on account of their having engaged in protected activity, including the initiation of this action and testifying or reasonably anticipating giving testimony in this case adverse to DEFENDANTS' defense, is unlawful under federal and state laws, including, but not limited to, 29 U.S.C.A. § 215(a)(3) and CAL. LABOR CODE § 98.6.

84. Any PLAINTIFFS who have been the subject of adverse employment actions are entitled, under federal and state law, to have those adverse employment actions reversed and, under CAL. LABOR CODE § 98.6, to a civil penalty not to exceed $10,000 per employee for each such violation, reinstatement and reimbursement for lost wages and work benefits, including reinstatement for bonus eligibility, and reasonable costs and attorneys fees incurred in the prosecution of this cause of action.

85. Any PLAINTIFFS who have not yet suffered an adverse employment action, but who have been the intended or unintended subjects of DEFENDANTS' intimidation and threats, as a result of the unlawful treatment of the PLAINTIFFS who have already given testimony, are entitled to declaratory relief declaring that DEFENDANTS' past course of conduct, as herein described, is unlawful, and further entitled to injunctive relief prohibiting DEFENDANTS from engaging in such conduct and assuring such PLAINTIFFS and non-party witnesses that they will have a plain and speedy remedy, such as expedited or summary contempt proceedings, should DEFENDANTS engage in conduct that violates the terms of the preliminary injunction.

## EIGHTH CAUSE OF ACTION
## UNFAIR BUSINESS PRACTICES

**(Bus. & Prof. Code §§ 17200** *et seq.***)**

**(By PLAINTIFFS Against All DEFENDANTS)**

86. PLAINTIFFS hereby incorporate by reference the preceding paragraphs of this complaint as though set forth in full at this point.

87. Section 17200 of the California *Business and Professions Code* prohibits any unlawful, unfair or fraudulent business act or practice.

88. PLAINTIFFS bring this cause of action in a representative capacity on behalf of the general public and the persons affected by the unlawful and unfair conduct described herein.   PLAINTIFFS have suffered and continue to suffer injury in fact and deprivation of wages and monies as a result of DEFENDANTS' actions.

89. The actions of DEFENDANTS, as herein alleged, amount to conduct which is unfair and a violation of law.   As such, said conduct constitutes unfair business practices, in violation of *Business and Professions Code* §§ 17200 *et. seq*.

90. DEFENDANTS' conduct as herein alleged has damaged PLAINTIFFS by denying them wages due and payable, and by failing to provide proper wage statements.    DEFENDANTS'   actions   are   thus   substantially   injurious   to PLAINTIFFS, causing them injury in fact and loss of money.

91. As a result of such conduct, DEFENDANTS have unlawfully and unfairly obtained monies owed to PLAINTIFFS.

92. The amount of wages due to PLAINTIFFS can be readily determined from DEFENDANTS' records.   PLAINTIFFS are entitled to restitution of monies due and obtained by DEFENDANTS as a result of DEFENDANTS' unlawful and unfair conduct.

93. During the Class Period, DEFENDANTS committed, and continue to commit acts of unfair competition as defined by Sections 17200 et. seq. of the *Business and Professions Code,* by and among other things, engaging in the acts and practices described above.

94. DEFENDANTS' course of conduct, acts, and practices in violation of the California laws and regulations, as mentioned in each paragraph above, constitute distinct, separate and independent violations of Sections 17200 et seq. of the *Business and Professions Code.*

95. The harm to PLAINTIFFS of being wrongfully denied lawfully earned but unpaid wages outweighs the utility, if any, of DEFENDANTS' policies and practices and, therefore, DEFENDANTS' actions described herein constitute unfair business practices or acts within the meaning of Bus. & Prof. Code §§ 17200, et seq.

96. DEFENDANTS' conduct described herein threatens an incipient violation of California's wage and hour laws, and/or violates the policy or spirit of such laws, or otherwise significantly threatens or harms competition.

97. DEFENDANTS' course of conduct described herein further violates Bus. & Prof. Code §§ 17200, et seq., in that it is fraudulent, improper, and/or unfair.

98. The unlawful, unfair, and fraudulent business practices and acts of DEFENDANTS as described hereinabove have injured PLAINTIFFS in that they were wrongfully denied the timely and full payment of wages owed to them.

99. DEFENDANTS have been unjustly enriched as a direct result of their unlawful business practices alleged in this complaint and will continue to benefit from those practices and have an unfair competitive advantage if allowed to retain the unpaid wages.

## NINTH CAUSE OF ACTION
## CIVIL PENALTIES UNDER THE
## CALIFORNIA PRIVATE ATTORNEYS GENERAL ACT
### (Labor Code §§ 558, 2698, *et seq.*)
### (By PLAINTIFFS Against All DEFENDANTS)

100. PLAINTIFFS hereby incorporate by reference the preceding

paragraphs of this complaint as though set forth in full at this point.

101. Under Labor Code § 2699, any employee aggrieved by an employer's violation of the Labor Code or applicable Wage Order has the right to file an action on behalf of all aggrieved employees for the penalties established by Section 2699 and/or other Labor Code sections and/or Wage Order provisions.

102. Pursuant to Labor Code § 558, any employer or other person acting on behalf of an employer who violates, or causes to be violated, the Labor Code or any provision in any order of the Industrial Welfare Commission shall be subject to a civil penalty properly recoverable under the California Private Attorneys General Act.

103. PLAINTIFFS allege on information and belief, as well as in part on personal knowledge, that their supervisors, while charged with overseeing the PLAINTIFFS and enforcing TLIC's and TRS's policies and procedures with respect to the PLAINTIFFS, knew that PLAINTIFFS were working overtime hours, that they were not receiving required meal and/or rest breaks and were not being paid premium wages for overtime, non-complaint meal breaks, or non-compliant rest breaks.

104. All of the wrongful acts and omissions of DEFENDANTS set forth in this complaint were violations of the Labor Code and/or the applicable Wage Order, as set forth herein.  PLAINTIFFS are employees who have been aggrieved by DEFENDANTS' violations of the aforementioned statutory and/or regulatory provisions.

105. PLAINTIFFS claim herein all penalties permitted by the Private Attorneys General Act of 2004 (PAGA), Labor Code § 2698, et seq., and have complied or are in the process of complying with the procedures for bringing suit specified by Labor Code § 2699.3.  By letter dated February 9, 2015, PLAINTIFFS gave written notice by certified mail to the Labor and Workforce Development Agency ("LWDA"), and defendants TLIC and TRS, of the specific provisions of

Third Amended Complaint

the Labor Code alleged to have been violated, including the facts and theories to support the alleged violations. At least 33 days have elapsed since the notice to the LWDA and no action was taken by the LWDA.

106. On March 13, 2015, defendants TLIC and TRS mailed a letter to the LWDA (with a copy to plaintiffs' counsel), claiming to have cured certain violations, pursuant to Labor Code section 2699.3(c) and setting forth other grounds for their contentions that the LWDA should investigate and intervene, thereby depriving PLAINTIFFS of standing to pursue this complaint.

107. On March 16, 2015, PLAINTIFFS' counsel wrote to the LWDA, via letter sent by certified mail to the LWDA and defendants, TLIC and TRS, and/or their attorneys, pursuant to Labor Code section 2699.3(c)(3), disputing the said defendants' claim of cure and refuting the other positions taken by said defendants in their March 13 letter.

108. As of the time of the filing of this Second Amended Complaint, more than 17 days have elapsed since the certified mailing of PLAINTIFFS' letter disputing defendants TLIC and TRS' purported cure and PLAINTIFFS' counsel has not received any notification from the LWDA, whatsoever.

109. PLAINTIFFS, as a matter of law, have complied with all legal requirements and are now permitted to proceed with this litigation, and in particular this cause of action, and specifically with respect to the claims set forth herein that fall within the ambit of Labor Code section 2699.3(c), as well as all other claims for civil penalties that do not otherwise fall within the provisions of that subdivision.

### TENTH CAUSE OF ACTION

### FOR FAILURE TO PAY MINIMUM WAGES AND/OR OVERTIME

### UNDER THE FAIR LABOR STANDARDS ACT

### (29 U.S.C. §§ 206, et seq.)

### (By PLAINTIFFS Against All DEFENDANTS)

110. PLAINTIFFS hereby incorporate by reference the preceding paragraphs of this complaint as though set forth in full at this point.

111. Pursuant to the Fair Labor Standards Act ("FLSA"), DEFENDANTS, at all times pertinent, have a duty to pay PLAINTIFFS at least minimum wages for all hours worked and/or overtime wages for all hours worked that exceed 40 hours in a workweek.

112. As hereinabove alleged, DEFENDANTS failed to compensate PLAINTIFFS for all hours worked and, further, failed to pay PLAINTIFFS overtime wages for hours worked in excess of 40 hours in a week.

113. As a result of DEFENDANTS' failure to meet its obligations under the FLSA, PLAINTIFFS are entitled to recover the amount of their unpaid minimum wages and/or overtime compensation, and an additional equal amount as liquidated damages, as well as attorneys fees and costs incurred in prosecuting this matter.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS pray for judgment against DEFENDANTS as follows:

A.    For compensatory damages in an amount according to proof with interest thereon;

B.    For economic and/or special damages in an amount according to proof with interest thereon;

C.    For payment of unpaid wages in accordance with California labor law;

D.    For payment of statutory and civil penalties in accordance with California law;

E.    For declaratory relief declaring that DEFENDANTS' conduct in issuing Final Written Warnings to Plaintiffs Phan and Stojanovic amounts to unlawful retaliation and intimidation;

F.    For an injunction prohibiting DEFENDANTS from engaging in any

retaliatory or other conduct designed to discriminate or intimidate, or having the effect of discriminating or intimidating, any PLAINTIFFS or non-party employee witnesses, or taking any adverse employment actions against such individual, with respect to their participation and/or testimony in this lawsuit, with respect to the issues encompassed by the operative complaint; ordering that DEFENDANTS expunge the Final Written Warnings from the personnel files of Plaintiffs Phan and Stojanovic; ordering DEFENDANTS to reinstate bonus eligibility for Plaintiffs Phan and Stojanovic; requiring DEFENDANTS to allow PLAINTIFFS' counsel to meet with PLAINTIFFS and the other non-management employees in the Installation and PASS Units, without the presence of DEFENDANTS or any of its agents to explain their rights to testify and/or participate without fear in this litigation that seeks redress for wage and hour protections all workers are entitled to; granting the civil penalty set forth in Labor Code § 98.6 in an amount not to exceed $10,000 for each violation of that statute; and awarding attorneys fees and costs to PLAINTIFFS for all detriment incurred as a result of DEFENDANTS' retaliatory, discriminatory, and intimidating conduct during the course of this litigation;

G.   For DEFENDANTS to be found to have engaged in unfair competition in violation of Bus. & Prof. Code §§ 17200, et seq.;

H.   For all penalties and recoveries permitted by the PAGA, Labor Code section 2698, *et seq*.;

I.   For DEFENDANTS to be ordered and enjoined to make restitution to PLAINTIFFS and disgorgement of profits from their unlawful business practices and an accounting, pursuant to California *Business and Professions Code* §§ 17203 and 17204;

J.   For interests, attorneys' fees and cost of suit under *Labor Code* §§ 226 and 1194 and *Code of Civil Procedure* §1021.5;

Third Amended Complaint

K.     For unpaid minimum wages and/or overtime compensation, liquidated damages, attorneys' fees and costs of suit, pursuant to the Fair Labor Standards Act; and,

L.     For all such other and further relief that the Court may deem just and proper.

///

///

///

///

## JURY DEMAND

PLAINTIFFS hereby demand a trial by jury in this case.

Respectfully Submitted,

Dated: December 10, 2015          **MARLIN & SALTZMAN, LLP**
                                  **THE HAMIDEH FIRM, P.C.**
                                  **LAW OFFICES OF PETER SHAHRIARI**


                                  By:   /Stephen P. O'Dell
                                        Stanley D. Saltzman
                                        Stephen P. O'Dell
                                        Tina Mehr
                                        Attorneys for PLAINTIFFS

*Exhibit 1 to Third Amended Complaint*



Human Resources
1160 South Olive Street, Ste, T-6-2
Los Angeles, CA 90015-2211
www.transamerica.com

## MEMORANDUM

**Date:** November 16, 2015

**To:** Thomas Phan

**From:** Leccia Johnson

**Subject:** Final Written Warning for Falsifying Time Cards

Thomas, effective today, November 16, 2015, I am placing you on Final Written Warning for inaccurate completion of your timecard. I have decided to take this action to communicate to you the seriousness with which I view your actions.

You recently admitted that you make and submit inaccurate timecard entries. You acknowledged that you have been knowingly and consistently recording time inaccurately without notifying management that you were doing so.

More specifically, you admitted that you have been inaccurately recording a meal break period but not taking that meal break period since your position as a PASS Consultant was reclassified from exempt to non-exempt. This constitutes falsification of your time cards, is against company policy, and is a very serious disciplinary matter which puts your employment in jeopardy.

During multiple meetings, both Darcy Hatton and Trina Jordan have reminded you of the requirement for accurate time keeping, including but not limited to recording accurate time of the beginning and end of your work period and taking and recording a meal period. Also, the requirement of submitting accurate time records is discussed in our Employee Handbook.

Your failure to keep accurate time records reflects poorly on your credibility and I expect that you will not repeat this behavior. I want to make sure you understand that if there is another instance of you falsifying your time card, it will result in further disciplinary action which could include the immediate termination of your employment.

Please be aware that employees on a written or final corrective action as of October 1 or later in the current calendar year are not eligible for that year's AEGON Companies Divisional (STIC) Bonus.

If you wish to discuss this situation or other matters of concerns, I encourage you to speak to your HR Business Partner. As you are aware, the Company has helpful resources such as the Employee Assistance Program (EAP) which provides confidential counseling services to employees and their families. You can reach Carebridge at: (800) 437-0911 or www.carebridge.com. The Company also has a toll-free S.H.A.R.E. Help Line (866) 263-7787 for workplace problems such as theft, harassment, or unethical behavior.

_____                    _____
Thomas Phan                                   Date

*Exhibit 2 to Third Amended Complaint*



Human Resources
1150 South Olive Street, Ste. T-6-2
Los Angeles, CA 90015-2211
www.transamerica.com

## MEMORANDUM

**Date:** November 16, 2015

**To:** Niko Stojanovic

**From:** Leecea Johnson

**Subject:** Final Written Warning for Falsifying Time Cards

Niko, effective today, November 16, 2015, I am placing you on Final Written Warning for inaccurate completion of your timecard. I have decided to take this action to communicate to you the seriousness with which I view your actions.

You recently admitted that you have continued to make and submit inaccurate timecard entries. You acknowledged that you have been knowingly recording time inaccurately despite your prior warning for the same infraction on November 6, 2014. As stated in your November 6, 2014 warning, your failure to keep accurate time records violates company policy and is very serious disciplinary matter which puts your employment in jeopardy. As a reminder, the requirement of submitting accurate time records is discussed in our Employee Handbook. I want to make sure you understand that if there is another instance of you falsifying your time card, it will result in immediate termination of your employment.

Please be aware that employees on a written or final corrective action as of October 1 or later in the current calendar year are not eligible for that year's AEGON Companies Divisional (STIC) Bonus.

If you wish to discuss this situation or other matters of concerns, I encourage you to speak to your HR Business Partner. As you are aware, the Company has helpful resources such as the Employee Assistance Program (EAP) which provides confidential counseling services to employees and their families. You can reach Carebridge at: (800) 437-0911 or www.carebridge.com. The Company also has a toll-free S.H.A.R.E. Help Line (866) 263-7787 for workplace problems such as theft, harassment, or unethical behavior.

_____          11.16.2015
Niko Stojanovic                          Date